UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Sensor Systems Support, Inc.**

              **v.**                         Case No. 10-cv-262-PB
                                             Opinion No. 2012 DNH 037
**Federal Aviation Administration**


**MEMORANDUM AND ORDER**

Sensor Systems Support, Inc. ("Sensor Systems") filed an amended complaint on October 3, 2011, seeking to compel the Federal Aviation Administration ("FAA") to produce records in response to its request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The FAA filed a motion to dismiss for lack of subject matter jurisdiction or in the alternative for summary judgment.  Sensor Systems responded with a combined filing that is both a cross-motion for summary judgment and an objection to the FAA's motion.[1]  For the reasons provided below,

---

[1] Sensor Systems' combined filing does not comply with Local Rule 7.1(a)(1).  Under that rule, "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing."  Nonetheless, I will consider both parts of the filing because the FAA has responded to both.

I deny Sensor Systems' motion and grant in part and deny in part the FAA's motion.

## I.  BACKGROUND

Sensor Systems sent a FOIA request to the FAA on June 26, 2009.  It sought all correspondence from Michael Hawthorne, FAA Program Manager, from July 1, 2008 to the time of the request that pertained to Sensor Systems or Daniel J. Oberlander. Hawthorne searched his computer files and found a total of 467 pages of responsive documents.  On August 17, 2009, the FAA sent Sensor Systems 171 pages of correspondence and withheld 296 pages based on a determination that the withheld pages were exempt from disclosure.

On September 10, 2009, Sensor Systems submitted a timely appeal of the FAA's initial determination.  Between October 2009 and May 2010, Sensor Systems sent four letters to the FAA Director of Administration informing him that the FAA had failed to timely respond to its appeal.

On July 6, 2010, in response to the FAA's continuing failure to respond to its appeal, Sensor Systems filed this action.  On July 20, the FAA informed Sensor Systems that it was

2

granting the appeal in part and released 261 of the 296 withheld pages, albeit with redactions on approximately 70 pages.[2]   On October 27, the FAA released all 296 pages of the previously withheld documents.   This final round of production included 67 pages with partial redactions claimed to be exempt from disclosure.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment Standard

The FAA seeks dismissal of this action on the ground that the court lacks subject matter jurisdiction because the FAA has not unlawfully withheld records.   In the alternative, the FAA moves for summary judgment.

Ordinarily, a motion to dismiss for lack of subject matter jurisdiction is analyzed under Rule 12(b)(1).   A court, however, must treat a motion challenging subject matter jurisdiction as a motion for summary judgment "where jurisdictional issues cannot be separated from the merits of the case."   Gonzales v. United States, 284 F.3d 281, 287 (1st Cir. 2002); see Valentin v. Hosp.

_____

[2] The FAA represents that the 261 pages that were released actually were all of the withheld pages because 35 pages were duplicates.

Bella Vista, 254 F.3d 358, 363 & n.3 (1st Cir. 2001).  "A jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case." Gonzales, 284 F.3d at 287.

To invoke subject matter jurisdiction under the FOIA, the plaintiff must allege that the agency "(1) 'improperly' (2) 'withheld' (3) 'agency records.'" Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980); see 5 U.S.C. § 552(a)(4)(B).  If the elements of jurisdiction are properly alleged, the burden shifts to the agency to show that the records sought by the plaintiff are not agency records or were not improperly withheld.  U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  "[B]ecause FOIA serves as the source of both this court's subject matter jurisdiction and the plaintiff['s] cause of action, the jurisdictional inquiry is intertwined with the merits of [its] claim." Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003); see United States ex rel. Fine v. MK-Ferguson Co., 99 F.3d 1538, 1543 (10th Cir. 1996).  Accordingly, I must analyze the FAA's motion under Rule 56.

4

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

**B.    The FOIA Standard**

The FOIA requires government agencies to make their records available to the public upon request, unless at least one of several enumerated exemptions applies.  5 U.S.C. §§ 552(a)(3),(b).  An agency seeking to withhold materials

5

requested under the FOIA has the burden of proving that those materials are exempt from disclosure.  Orion Research Inc. v. EPA, 615 F.2d 551, 553 (1st Cir. 1980) (citing 5 U.S.C. § 552(a)(4)(B)).  The court conducts a de novo review as to the validity of the asserted exemptions.  Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  Although the FOIA authorizes courts to conduct in camera review of challenged documents, "[t]he legislative history indicates that, before in camera inspection is ordered, an agency should be given the opportunity to demonstrate by affidavit or testimony that the documents are clearly exempt from disclosure, and that the court is expected to accord 'substantial weight' to the agency's affidavit."  Bell v. United States, 563 F.2d 484, 487 (1st Cir. 1977); see Hayden v. NSA, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("When the agency meets its burden by means of affidavits, [i]n camera review is neither necessary nor appropriate.").

To satisfy its burden under the FOIA without submitting undisclosed records for in camera inspection, "the agency must furnish a detailed description of the contents of the withheld material and of the reasons for nondisclosure, correlating

specific FOIA exemptions with relevant portions of the withheld
material." Orion Research, 615 F.2d at 553; see Church of
Scientology, 30 F.3d at 231 ("[The agency] must supply a
relatively detailed justification, specifically identifying the
reasons why a particular exemption is relevant and correlating
those claims with the particular part of a withheld document to
which they apply." (internal quotation marks and emphasis
omitted)).  The agency's justification for the withholding must
be sufficient to give "'the FOIA requester a meaningful
opportunity to contest, and the district court an adequate
foundation to review, the soundness of the withholding.'"
Church of Scientology, 30 F.3d at 231 (quoting Wiener v. FBI,
943 F.2d 972, 977-78 (9th Cir. 1991)).  If the agency's
justification for the withholding is sufficient, the court
"'need not go further to test the expertise of the agency, or to
question its veracity when nothing appears to raise the issue of
good faith.'" Bell, 563 F.2d at 487 (quoting Weissman v. CIA,
565 F.2d 692, 697 (D.C. Cir. 1977)).

### III.  <u>ANALYSIS</u>

The FAA moves for summary judgment on the ground that the redacted parts of the requested documents are exempt from disclosure under the FOIA.  It relies on an affidavit from Hawthorne and what is commonly referred to as a <u>Vaughn</u> index.[3] The index provides a brief description of each redacted document and identifies the exemptions claimed to justify nondisclosure. Sensor Systems objects to the FAA's motion, arguing that the FAA's affidavit and <u>Vaughn</u> index are too vague and conclusory to allow the court to meaningfully evaluate the claimed exemptions. Consequently, Sensor Systems contends, the court should order the agency to produce the records for in camera review.[4]

---

[3] The term "<u>Vaughn</u> index" refers to <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  It is an index prepared by an agency that provides "a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document."  <u>Church of Scientology</u>, 30 F.3d at 228.

[4] In the same filing, Sensor Systems seeks summary judgment on the ground that the FAA failed to timely respond to its FOIA appeal.  As I thoroughly explained in my September 16, 2011 Memorandum and Order, the FOIA does not authorize a court to review an agency's failure to act on an appeal.  Doc. No. 18. To the extent Sensor Systems is again arguing that the FAA's delay in responding to the FOIA appeal entitles it to judgment as a matter of law, it does so without offering any new

The FAA defends its redactions by invoking three of the FOIA's enumerated exceptions.  First, it relies on Exception 5 in claiming that certain redactions are authorized either because the redacted information is protected by the deliberative process privilege or the attorney-client privilege. Second, it argues that other redactions are authorized by Exception 6 because the redacted information qualifies as exempt personal information.  Finally, it argues that its remaining redactions are authorized by Exemption 7(C) because the redacted information was compiled for law enforcement purposes and its disclosure would result in an unauthorized invasion of personal privacy.  I consider each of the FAA's arguments in turn.

**A.    Exemption 5**

The FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This provision, commonly referred to as "exemption 5," is designed to protect the agency's decision-making processes.  See NLRB v. Sears, Roebuck

---

arguments warranting reconsideration of my prior ruling.
Therefore, I deny its motion for summary judgment.

& Co., 421 U.S. 132, 149–150 (1975).  The exemption applies to
documents that are privileged in the civil discovery context,
including those protected by the attorney-client, attorney work
product, and deliberative process privileges.  Id.; Providence
Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir.
1992).  The FAA asserts both the deliberative process privilege
and the attorney-client privilege.

> ### 1. <u>Deliberative Process Privilege</u>

The FAA claims the deliberative process privilege with
respect to 50 of the 67 redacted pages.  The purpose of the
privilege is to "encourage[] frank and open discussions of
ideas, and, hence, improve[] the decisionmaking process."  Nat'l
Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1117 (9th
Cir. 1988).  The privilege performs this safeguarding function
in at least three ways:

> [I]t serves to assure that subordinates within an
> agency will feel free to provide the decisionmaker
> with their uninhibited opinions and recommendations
> without fear of later being subject to public ridicule
> or criticism; to protect against premature disclosure
> of proposed policies before they have been finally
> formulated or adopted; and to protect against
> confusing the issues and misleading the public by
> dissemination of documents suggesting reasons and
> rationales for a course of action which were not in
> fact the ultimate reasons for the agency's action.

Providence Journal, 981 F.2d at 557 (quoting Coastal States Gas
Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).
"The exemption thus covers recommendations, draft documents,
proposals, suggestions, and other subjective documents which
reflect the personal opinions of the writer rather than the
policy of the agency."   Coastal States, 617 F.2d at 866.

    The First Circuit has held that a document must be both
"predecisional" and "deliberative" to qualify for the
deliberative process privilege.   Providence Journal, 981 F.2d at
557.   A document is "predecisional" if the agency can (1)
"pinpoint the specific agency decision to which the document
correlates;" (2) "establish that its author prepared the
document for the purpose of assisting the agency official
charged with making the agency decision;" and (3) "verify that
the document precedes, in temporal sequence, the decision to
which it relates."   Id. (internal quotation marks and citations
omitted).   A document is "deliberative" if it: (1) "formed an
essential link in a specified consultative process;" (2)
"reflects the personal opinions of the writer rather than the
policy of the agency;" and (3) "if released, would inaccurately

reflect or prematurely disclose the views of the agency."  Id.
at 559 (internal quotation marks and alterations omitted).

The FAA asserts the deliberative process privilege for two
categories of redacted documents: draft responses to a
congressional inquiry from Senator Judd Gregg and intra-agency
email exchanges regarding the FAA's Bermuda project.

### a. **Draft Responses to the Congressional Inquiry**

The FAA asserts the deliberative process privilege with
respect to 21 redacted documents involving drafts of its
response to the congressional inquiry from Senator Gregg
regarding Sensor Systems' work in Bermuda.[5]  The FAA withheld
portions of its drafts that did not appear in the final agency
response to the inquiry.  Hawthorne Aff. ¶ 16, Doc. No. 21-2.
Other redactions involve email messages that contain proposed
revisions to the draft responses or that reveal FAA employees'
thoughts and deliberations regarding how to address allegations
raised in the inquiry.  Id.

The FAA's draft responses to the congressional inquiry and
discussions regarding those responses are predecisional, as they

---

[5] Vaughn Doc. Nos. 18, 20-21, 25, 27, 29-30, 37, 41, 43, 130,
134-5, 136, 140-1, 142, 144, 145, 275-6.  See Doc. No. 21-3.

predated the agency's final response and were prepared to assist the agency official charged with responding to the inquiry.  See Providence Journal, 981 F.2d at 557; Hawthorne Aff. ¶ 16.  The disputed issue is whether the draft responses and agency employees' comments on those drafts are deliberative.

Courts that have considered FOIA requests for agencies' draft responses to congressional inquiries have held that such documents are deliberative.  See, e.g., Sussman v. U.S. Dep't of Justice, No. 03 Civ. 3618(DRH)(ETB), 2008 WL 2946006, at *2-4 (E.D.N.Y. July 29, 2008); Sierra Club v. U.S. Dep't of Interior, 384 F. Supp. 2d 1, 19-20 (D.D.C. 2004); Mittleman v. King, No. Civ.A. 93–1869 SSH, 1997 WL 911801, at *8 (D.D.C. Nov. 4, 1997); Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 13 (D.D.C. 1995).  Draft documents in general are deemed deliberative "because comparing them to final documents can disclose editorial judgments that reflect the agency decisionmaking process."  Am. Fed'n of Gov't Emps. v. U.S. Dep't of Health & Human Servs., 63 F. Supp. 2d 104, 108 (D. Mass. 1999); see Mobil Oil Corp. v. EPA, 879 F.2d 698, 703 (9th Cir. 1989); Nat'l Wildlife, 861 F.2d at 1121-22; Dudman Comms. Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987); Russell v.

Dep't of the Air Force, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982).
Similarly, opinions and recommendations of agency employees
regarding issues addressed in draft documents "are themselves
the *essence* of the deliberative process" because they represent
"the mental processes of the agency in considering alternative
courses of action prior to settling on a final plan." Nat'l
Wildlife, 861 F.2d at 1121-22.   Release of those materials would
discourage candid discussion within the agency regarding issues
that factor into the decision-making calculus.   Id.; see United
States v. Nixon, 418 U.S. 683, 705 (1974).

Both the FAA's draft responses to the congressional inquiry
and the agency employees' comments on those drafts meet the
First Circuit's "deliberative document" test.   See Prudential
Journal, 981 F.2d at 559-560.   First, they "formed an essential
link in a specified consultative process" because the documents
were prepared to facilitate the agency's final response to the
inquiry and were not "merely cumulative or peripheral."   See
id.; Hawthorne Aff. ¶ 16.   Second, the documents reflect
opinions of individual employees as opposed to the official
position of the agency, which is contained in the final version
of the response.   See Prudential Journal, 981 F.2d at 559-560.

Lastly, release of the redacted information would inaccurately reflect the views of the agency, as it includes advice, recommendations, and conclusions not incorporated into the agency's final response.  See id.  Therefore, the FAA properly withheld portions of the draft responses as material protected under the deliberative process privilege.

Sensor Systems' argument that the deliberative process privilege does not attach to the draft responses because responding to a congressional inquiry involves neither the agency's decisional nor its policymaking function is unpersuasive.  The First Circuit has clarified that the deliberative process privilege is not limited to consultations over official agency policy.  See Prudential Journal, 981 F.2d at 559-560.  "Rather, the appropriate judicial inquiry is whether the agency document was prepared to facilitate and inform a final decision or deliberative function entrusted to the agency."  Id. at 560.  Here, the congressional inquiry was directed at the FAA.  The FAA had to respond to allegations Sensor Systems' raised against the agency in the inquiry.  Therefore, the agency's response to that inquiry plainly involved a deliberative function entrusted to the agency.  The

fact that the response is not a formal act of agency policymaking is irrelevant.

Because the FAA's Vaughn index and Hawthorne's affidavit are sufficiently detailed to enable me to determine that the redacted portions of the draft responses to the congressional inquiry and the related email exchanges are entitled to nondisclosure under Exemption 5, I need not conduct in camera review.  See Church of Scientology, 30 F.3d at 231; Bell, 563 F.2d at 487.  The FAA is entitled to summary judgment with respect to those 21 documents.

### b.   Email Exchanges Regarding the Bermuda Project

The FAA also asserts the deliberative process privilege with respect to redactions in 29 email exchanges[6] regarding implementation of the agency's December 2007 agreement with the Government of Bermuda.  The agreement was concluded to support an upgrade to the radar system at the Wade International Airport in Bermuda.  The FAA agreed to loan its equipment for the project.  The Government of Bermuda contracted with Sensor Systems to manage the acquisition and installation of the loaned

---

[6] Vaughn Doc. Nos. 9, 10, 23, 65, 71, 72, 76-77, 81, 99, 100-101, 103, 104-5, 107, 107-109, 112, 120, 121, 148, 150-7, 157, 179, 184, 203, 267, 269, 272, 277.  See Doc. No. 21-3.

FAA equipment.  Redactions in the intra-agency email exchanges regarding the Bermuda project contain "employees' opinions and recommendations concerning the installation [of the loaned FAA equipment], technical difficulties in that installation, and government-to-government policy."  Hawthorne Aff. ¶ 15.

Sensor Systems argues that all of the documents in this category are outside the scope of the deliberative process privilege because they post-date the agency's December 2007 agreement with the Government of Bermuda.  As such, Sensor Systems contends, the documents cannot qualify as predecisional, as they are "merely reflective of those policies and decisions already enunciated" in the agreement.  Doc. No. 24-1 at 14-15. In response, the FAA maintains that signing the agreement did not signal the final agency decision that would ever be made regarding the Bermuda project; rather, it "was merely the first step in the relationship between all of the relevant parties." Doc. No. 28 at 5.

I agree with the FAA that the emails should not necessarily be deemed to be post decisional merely because they were prepared after the FAA's agreement with the government of Bermuda.  The agency clearly had to make subsequent decisions

regarding implementation of the agreement and Sensor Systems has failed to explain why emails that predate such decisions cannot be considered predecisional under any circumstances.

The FAA, however, cannot meet its burden of establishing that the email exchanges at issue are predecisional simply by stating that they involved the continuing process of agency decision-making regarding the Bermuda project. If the FAA's conclusory position were sufficient to invoke the privilege, the exemption would effectively swallow the FOIA's rule of broad disclosure. See Church of Scientology, 30 F.3d at 228-29. The controlling authority that the FAA cites does not hold to the contrary. See NLRB, 421 U.S. at 151 n.18; Providence Journal, 981 F.2d at 559. Although not all intra-agency deliberations "ripen into agency decisions," the FAA must at the very least identify the decision contemplated in those deliberations. See NLRB, 421 U.S. at 151 & n.18. Otherwise, the predecisional prong of the deliberative process privilege test would be inconsequential. Providence Journal, 981 F.2d at 557.

The following are but a few examples of patently inadequate descriptions of the redacted email exchanges regarding the Bermuda project:

18

- <u>Vaughn</u> Doc. No. 148: "E-mail of 6/8/09 from Michael Hawthorne to Maria DiPasquantonio concerning issues regarding radar installation.  Deliberative."  Doc. No. 21-3 at 8.

- <u>Vaughn</u> Doc. No. 23: "E-mail dated 9/23/09 from Michael Hawthorne to Maria DiPasquantonio concerning Bermuda's sharing of government-to-government information with [Sensor Systems].  Redacted portion of e-mail that reveals FAA employee's thoughts on what Bermuda was sharing with [Sensor Systems].  Deliberative."  <u>Id.</u> at 3.

In neither instance has the FAA provided sufficient information to enable me to determine whether the email exchange predated any sort of contemplated agency decision or action regarding the project.  <u>See</u> <u>Providence Journal</u>, 981 F.2d at 557.  Nor do those descriptions explain with sufficient detail the deliberative nature of the redacted portions of those emails.  <u>Id.</u> at 559. The remaining index entries with respect to documents in this category suffer from a similar infirmity.

Because neither the Hawthorne affidavit nor the <u>Vaughn</u> index provides sufficiently detailed information to enable me to determine whether the deliberative process privilege applies, I deny the FAA's motion for summary judgment with respect to email exchanges regarding the Bermuda project.  The FAA must provide a supplemental <u>Vaughn</u> index and/or supporting affidavits to satisfy its burden of proving that Exemption 5 permits

19

nondisclosure of those documents.  Alternatively, the FAA must produce the documents for in camera review.

    **2.   Attorney-Client Privilege**

The FAA asserts the attorney-client privilege applies to eight pages of redacted email exchanges between Hawthorne and FAA legal counsel.[7]  The agency, however, has neglected to supply the court with sufficient facts, either in its index or in the Hawthorne affidavit, to permit a conclusion that the attorney-client privilege applies.

The attorney-client privilege "protects confidential communications made by a client to his attorney." Maine v. U.S. Dep't of the Interior, 298 F.3d 60, 70 (1st Cir. 2002).  The First Circuit has explained that

> [t]he privilege also protects from disclosure
> documents provided by an attorney if the party
> asserting the privilege shows: (1) that he was or
> sought to be a client of the attorney; (2) that the

---

[7] Vaughn Doc. Nos. 18, 20-21, 65, 72, 121, 136, and 277.  See Doc. No. 21-3.  The FAA also asserts the deliberative process privilege with respect to all eight pages.  Four pages involve draft responses to the congressional inquiry, which I determined to be exempt under the deliberative process privilege (Vaughn Doc. Nos. 18, 20-21, and 136).  The remaining four pages involve email exchanges regarding the Bermuda project, with respect to which the FAA has not met its burden of proving that the deliberative process privilege applies.

> attorney in connection with the document acted as a lawyer; (3) that the document relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived.

Id. at 71 (internal quotation marks and alterations omitted). The agency asserting the privilege must explain in a non-conclusory fashion "how the documents claimed to be protected establish that they relate to a confidential client communication."  Id.  The agency cannot "assume[] that the requirement of client communicated confidentiality is satisfied merely because the documents are communications between a client and attorney."  Id.; see Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977) ("The [attorney-client] privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship . . . .  It must also be demonstrated that the information is confidential.").

Descriptions of the eight pages with respect to which the FAA claims the privilege give no indication as to the confidentiality of the information on which they are based. Vaughn Document Number 65 is representative: "E-mail from

Michael Hawthorne dated 3/27/09 to FAA attorney Mark Bury on
government-to-government policy.  Redacted portions of e-mail
that reveals policy discussions.  Attorney-client privilege,
deliberative."  Doc. No. 21-3 at 5.  This index entry provides
no explanation justifying exemption based on the attorney-client
privilege, as it "fails to identify any circumstance expressly
or inferentially supporting confidentiality." Maine, 298 F.3d
at 72.  Descriptions of the remaining documents in this category
are similarly insufficient.

     I deny the FAA's motion with respect to documents claimed
to be exempt under the attorney-client privilege.  The FAA must
provide a supplemental Vaughn index and/or supporting affidavit
justifying the exemption or produce the documents for in camera
review.

**B.   Exemption 6**

     The FAA claims FOIA Exemption 6 with respect to four
documents redacted to exclude the name and other identifying
information of an FAA employee.  The employee was investigated

22

by the OIG for possible misconduct in working "on the side" for

Sensor Systems in Bermuda.[8]   Hawthorne Aff. ¶¶ 6, 17.

Exemption 6 protects from disclosure "personnel and medical

files and similar files the disclosure of which would constitute

a clearly unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(6).  The exemption "protect[s] individuals from the

injury and embarrassment that can result from the unnecessary

disclosure of personal information." U.S. Dep't of State v.

Washington Post Co., 456 U.S. 595, 599 (1982).  To determine

whether information is properly withheld under this exemption, I

must balance the relative privacy and public interests.  Maynard

v. CIA, 986 F.2d 547, 566-67 (1st Cir. 1993).[9]

Under some circumstances, individuals retain a strong

privacy interest in their identities, and information

---

[8] Vaughn Doc. Nos. 45, 47, 48, and 50.  See Doc. No. 21-3.  The
FAA cites Exemption 6 in addition to Exemption 7(C) for four
additional documents involving the contact information of an OIG
special agent.  Because I conclude that his contact information
is covered by Exemption 7(C), I do not address whether it also
exempt under Exemption 6.

[9] Because both Exemptions 6 and 7(C) require a balancing approach
that weighs public and private interests, cases involving
Exemption 7(C) inform my analysis.  Exemption 7(C) is similar
to, but more protective of privacy, than Exemption 6.  See U.S.
Dep't of Justice v. Reporters Comm. for Freedom of the Press,
489 U.S. 749, 756 (1989).

identifying individuals may be withheld to protect that privacy interest.  Church of Scientology, 30 F.3d at 237-38; see Providence Journal, 981 F.2d at 568.  In particular, "[p]ublic identification of the targets of law enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm."  Providence Journal, 981 F.2d at 568 (internal quotation marks and citation omitted). Although a government employee investigated for performance-related misconduct "generally possesses a diminished privacy interest" in comparison to private individuals, "an internal criminal investigation would not invariably trigger FOIA disclosure of the identity of the targeted government employee." Id.  Public identification of such employees "'could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.'"  Id. (quoting New Eng. Apple Council v. Donovan, 725 F.2d 139, 142 (1st Cir. 1984)).  Therefore, the FAA employee whose name and identifying information the agency redacted from certain documents so as not to identify him as the target of the OIG investigation has a privacy interest in the nondisclosure of his identity.

To determine whether disclosure of the employee's identity would constitute a "clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), I must weigh the employee's privacy interest against any countervailing public interest in disclosure.  See Maynard, 986 F.2d at 566-67.  "[T]he only cognizable 'public interest' for purposes of FOIA is 'the citizens' right to be informed about 'what their government is up to.''"  Id. at 566 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)).

The First Circuit has recognized that "[t]he public has a significant, enduring interest in remaining informed about actions taken by public officials in the course of their official duties."  Donovan, 725 F.2d at 144; see Providence Journal, 981 F.2d at 568.  In a case like this, where the agency has disclosed the fact that an unnamed employee was accused of misconduct, "the relevant interest is 'only in knowing *who* the public servant[] [is] that [was] involved in the governmental wrongdoing.'"  Trentadue v. Integrity Comm., 501 F.3d 1215, 1233-34 (10th Cir. 2007) (quoting Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984)).  Therefore, disclosure of the redacted

25

information "would shed little light on the conduct of the agency; rather, it would simply identify the alleged wrongdoer." Id. at 1234.

The rank of the agency official investigated for misconduct is an important consideration in weighing the public interest in the disclosure of his or her identity.  See Providence Journal, 981 F.2d at 568 ("The higher the rank of the public official alleged to have engaged in misconduct, the greater the legitimate public interest in disclosure is likely to be."); Trentadue, 501 F.3d at 1234 ("The public interest in learning of a government employee's misconduct increases as one moves up an agency's hierarchical ladder.").  In cases involving low-ranking officials, courts have generally held that the privacy interest of that employee outweighs the public interest in the disclosure of his or her identity.  See Trentadue, 501 F.3d at 1234; Maynard, 986 F.2d at 566-67; Providence Journal, 981 F.2d at 568-69; Stern, 737 F.2d at 92-93.

Here, the FAA properly withheld the identity of the FAA employee who was investigated for misconduct because the disclosure would constitute a clearly unwarranted invasion of the employee's privacy.  Sensor System's argument that it

26

already knows the identity of the employee "in no way undermines the privacy interests of [that] individual[] in avoiding harassment and annoyance that could result should the [agency] *confirm* [his or her identity]." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984); see Thomas v. U.S. Dep't of Justice, 531 F. Supp. 2d 102, 109 (D.D.C. 2008) ("Third parties' privacy interests are not lost because a requester knows or can determine from a redacted record their identities."). The individual was a low-level FAA employee and the disclosure of his or her identity would shed little light on the operation of the agency. The FAA is, therefore, entitled to summary judgment with respect to the documents redacted to exclude the name and other identifying information of the investigated employee.

C.   **Exemption 7(C)**

The last category of withheld material involves four documents from which the FAA redacted the contact information of OIG Special Agent Gerard Tucker.[10]  The contact information includes his work address, email address, office telephone

---

[10] Vaughn Doc. Nos. 85-86, 182, 282.  See Doc. No. 21-3.

number, and cell phone number.  The FAA claims Exemption 7(C)
with respect to those redactions.

Exemption 7(C) protects from disclosure information
compiled for law enforcement purposes that "could reasonably be
expected to constitute an unwarranted invasion of personal
privacy." 5 U.S.C. § 552(b)(7)(C).  The exemption "requires
balancing the privacy interests at issue against any public
interest in disclosure." Church of Scientology, 30 F.3d at 237;
see Reporters Comm., 489 U.S. at 762.

The documents at issue here are communications between
Special Agent Tucker and Hawthorne made in the course of an OIG
investigation.  Hawthorne Aff. ¶ 13.  As such, they were
compiled for law enforcement purposes.  See Donovan, 725 F.2d at
143.  The issue is whether disclosure of the redacted parts
would constitute an unwarranted invasion of Special Agent
Tucker's privacy.  I conclude that it would.

Law enforcement personnel have significant privacy
interests in keeping their names or other identifying
information from being generally disclosed.  Maynard, 986 F.2d
at 566; Donovan, 725 F.2d at 142.  That privacy interest
"'encompass[es] the individual's control of information

concerning his or her person,'" including address and other

contact information.  U.S. Dep't of Defense v. Fed. Labor

Relations Auth., 510 U.S. 487, 500 (1994) (quoting Reporters

Comm., 489 U.S. at 763)).  Hence, Special Agent Tucker's privacy

interest in keeping his contact information undisclosed is,

substantial.  See id.  As the First Circuit has noted,

> Even though OIG investigations into white collar
> criminal activity . . . might not invite the type of
> animosity and motivation for reprisal activated by FBI
> searches and arrests pursuant to violent crimes, the
> individual officer's interest in retaining the
> capability to perform his tasks effectively by
> avoiding untoward annoyance or harassment is no less
> significant.  The potential for this annoyance or
> harassment need not rise to the level of physical
> endangerment before the protection of 7(C) may be
> invoked.

Donovan, 725 F.2d at 143.

"Where the privacy concerns addressed by Exemption 7(C) are

present, the exemption requires the person requesting the

information to establish a sufficient reason for the

disclosure."  Nat'l Archives & Records Admin. v. Favish, 541

U.S. 157, 172 (2004).  To be sufficient, the reason for the

disclosure must pertain to "'the citizens' right to be informed

about 'what their government is up to.''"  Maynard, 986 F.2d at

566 (quoting Reporters Comm., 489 U.S. at 773)).

Here, Sensor Systems has failed to demonstrate how the
disclosure of Special Agent Tucker's contact information would
reveal "what the government is up to." See id.  It merely
argues that the redacted information is already in the public
forum because the subpoena the OIG issued to Sensor Systems
included the agent's contact information.  That argument is
inapposite.  "An individual's interest in controlling the
dissemination of information regarding personal matters [such
one's home address] does not dissolve simply because that
information may be available to the public in some form." Fed.
Labor Relations Auth., 510 U.S. at 500.

Given that Sensor Systems has not established a FOIA-
related public interest in the disclosure, I need not dwell upon
the balance between private and public interests.  See id.
("Because a very slight privacy interest would suffice to
outweigh the [virtually nonexistent] public interest, we need
not be exact in our quantification of the privacy interest.").
As the First Circuit remarked in a similar case, "something
outweighs nothing every time." Maynard, 986 F.2d at 566
(internal quotation marks and ellipses omitted).  Therefore, the
FAA is entitled to summary judgment with respect to redactions

involving Special Agent Tucker's contact information because it has met its burden of proving that the information is protected from disclosure under Exemption 7(C).

**D.   <u>Attorneys' Fees</u>**

Sensor Systems requests that it be awarded attorneys' fees at this stage in the litigation.  The FOIA allows the court, in its discretion, to award attorneys' fees to a requesting party who substantially prevails in a FOIA request.  5 U.S.C. § 552(a)(4)(E).  An attorneys' fee award depends upon a two-step process: substantial success and the balance of four equitable factors.  See <u>Maynard</u>, 986 F.2d at 568.  Although an interim award of fees may be appropriate in some cases, Sensor Systems has made an insufficient showing in support of its request. <u>See, e.g.</u>, <u>Allen v. FBI</u>, 716 F. Supp. 667, 672 (D.D.C. 1988). Accordingly, I decline to exercise my discretion to award attorneys' fees at this stage.

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, I deny Sensor Systems' motion for summary judgment (Doc. No. 24).  I grant the FAA's motion for summary judgment (Doc. No. 21) with respect to the

redacted documents involving: (1) draft responses to the
congressional inquiry; (2) name and identifying information of
FAA employee investigated for misconduct; and (3) contact
information for Special Agent Tucker.  I deny the FAA's motion
with respect to the remaining documents.  I direct the agency
either to produce a supplemental Vaughn index and/or supporting
affidavit to enable me to determine whether redactions in those
documents are exempt from disclosure, or to submit the documents
for in camera review.  The FAA must produce the requested
information and resubmit its motion for summary judgment within
14 days from the date of this Memorandum and Order.  Sensor
Systems shall have 14 days from the date of the FAA's submission
to object to the motion.

    SO ORDERED.


                              /s/Paul Barbadoro
                              Paul Barbadoro
                              United States District Judge


February 9, 2012

cc:  G. Shepard Bingham, Esq.
     Matthew A. Caffrey, Esq.
     Michael T. McCormack, Esq.